Case number 16-1790, George Dernis et al. v. Amos Financial et al., oral argument not to exceed 15 minutes per side. Mr. Matthew DiPerno for the appellant, you may proceed. Thank you. It may please the court, Matthew DiPerno on behalf of the appellants. I reserve five minutes rebuttal time. There's a lot of briefing in this and a lot of extraneous issues, I think, that have been briefed. I think the case really boils down to an issue of federalism because in this case the lawsuit was brought in the state of Michigan, Alley and County Circuit Court. The case, we filed an amended complaint where we added the FDIC and we served the FDIC pursuant to Michigan law. The FDIC did nothing for months. They went way beyond the time period to remove the case. Under the 30-day time period or the 90-day period, they were still late. They ultimately removed the case at the very time we were sitting in the courtroom scheduled for oral argument on our motion for judgment to have that default converted into a judgment against the FDIC. We were sitting there ready for oral argument and the judge came out. He came onto the bench for oral argument and the FDIC came into the room and removed the case to federal court at that time by providing the court with their notice that was filed that very morning. So that's what the case comes down to, I think, is whether we properly served the FDIC under Michigan law. Okay, assuming you did and assuming that the removal was untimely, it still is in Judge Yonker's court. And it's my understanding that the removal procedure is not jurisdictional, that it's a procedural rule, and therefore a defect in the removal to the federal court does not deprive the federal court of jurisdiction. And Judge Yonker granted the motion to dismiss on the merits. If you follow all that, don't we go to the merits and see if his ruling on the motion to dismiss was proper or not? I mean, can't we get by the whole issue of improper service, untimely removal, and go to the merits there? I don't think so. Why not? What's wrong with that analysis that I just gave you? Well, because with all due respect to Judge Yonker, who I have great respect for and have been in front of many times, I think he had to – in order to get to that point, in order to get to the merits as you described them, he had to do some legal gymnastics to determine that the case was properly removed to him in the first place. Well, do you concede that he did have jurisdiction, even though it was improperly removed? No, I don't concede that he had jurisdiction. I mean, there's case law cited by the FDIC that defects in the removal are not jurisdictional defects. They're procedural defects. Do you agree with that or not? I don't think we get to federal court unless they properly remove the case. So you're saying that they are jurisdictional defects? Absolutely. That a defect in removal deprives the federal court of their jurisdiction. That's your position? Correct. I don't think the cases say that. That's all. Well, I say that in order to get to federal court, there's ways for a defendant to get to federal court, which is they file a timely removal. If they don't do that, we're not in federal court. We're still in state court. Well, you're not supposed to be in federal court, and you have defenses of being in federal court, which would be entitled you to a remand. But whether the federal court has power at that point, I think, is the key to the case. That's all. Well, I think we can be in state court. We don't have to be in federal court. We chose to be in state court, and Taflin v. Levitt says that Michigan courts have concurrent jurisdiction to decide federal claims such as RICO. Michigan courts are courts of general jurisdiction under Ireland v. Tunis. We can be in state court. I agree. So in order for the FDIC to get to federal court, they had to remove timely, or we would have been in state court. I think that's the key to the case. I've seen cases before where there are untimely removals or defects in the removal to federal court, and still we get decisions from the federal court. But your position is they're all null and void. Well, with all due respect, I think I don't know what the facts are leading up to those cases, but I know in this case that for Judge Yonker, and when you read his opinion, I think it's very linear. For him to decide the issue on the merits, where he ultimately got to in the end, his first bit of analysis was whether removal was proper, and he had to get past that hurdle of service. And he had to do that, and I think that was linear. He recognized he had to do that in order to get to the merits of the case. You can argue any way you want, but I'm kind of with you that I think the service under Michigan law was proper, and the removal was not timely. And then I'm over here, okay, relate on the merits. So you may want to argue improper service and timeliness or untimeliness to my colleagues, but at least I'm with you there, and my concern is do we reverse them on the merits of the case? Well, I think certainly if you want to get to the merits of the case then, and to get to the merits of the case, we didn't even have oral argument. We didn't do anything. You're not entitled to oral arguments, so who cares? Well, we didn't do anything at that point. There was a motion. Can you address the federal statute that would appear to require exhaustion? Yeah, the issue of exhaustion deals with, in order to sue the FDIC, there has to be some initial procedural exhaustion of administrative remedies when you're dealing with a case that comes down to issues involving assets of the FDIC. And it was our position in this case that when the lawsuit was filed and when the FDIC was brought into the case under the RICO claim, they had already sold that property. So you think that the statute is inapplicable to this particular situation? I'm sorry, I didn't hear what you said. You believe the statute to be inapplicable to this particular situation? Yes. What if you're wrong about that? And what if it does apply? And what if on remand the state court would lack jurisdiction in the same way the federal court does? Is there any reason that the district court should not go ahead and dismiss the case based on the statute? Well, I'll concede to you. Certainly, if we're in that, I think I have a problem. I've got a problem in terms of that statute. But I don't think we get to there first because I think the district court erred in its reasoning in terms of saying that the case was properly before it and that it had jurisdiction. In order to consider the applicability of the statute, is it a necessary prerequisite to that that the district court have found that the case is properly before it? I believe yes. The answer is absolutely. And I think you see that in Judge Yonker's reasoning in terms of why he had to first deal with the issue of service. He had to deal with that. Otherwise, I had a motion for remand in front of him, which he denied as moot. But he had to get to the issue of how is the case in front of him in the first place. And his analysis deals with that very issue that you're talking about. His analysis says that because service was improper, was his conclusion, under Federal Rule 4, therefore the remand was timely. That was his analysis. That's how he got to the issue of the remand in front of him. If he rules the other way, his opinion would have been much shorter. He would have said remand is not timely, as he did ultimately in the end of his opinion. Maybe he was just doing a comprehensive opinion. He was addressing all the issues raised, even though he could have written a shorter opinion. I don't know. We don't really know. I don't know why he did it that way. But I think in order to get to the conclusion he got to, he had to deal with the issue of service. And I think he was wrong, with all due respect, on the issue of service. They were properly served under Michigan law, and that's what's important. And I believe his opinion should stop at that point. He should say remand was not timely, or removal was not timely, remand to the state court for further consideration. At that point, FDIC is free in state court to go to the state court judge and argue their issue of jurisdiction, raise their defense of jurisdiction. The problem, I think, with that, and the FDIC does have a very big problem with that, is that they're under default in the state court. They sat on their hands. They did nothing. They were defaulted. They received notices of default, a motion to convert that default into a judgment. They did nothing other than remove to federal court. So they've got a big problem. I have to ask you a question because your time has expired. Okay. Do you maintain that you made the argument to the district court that the FDIC, the so-called FDIC never served us, never notified us before, like in the exhaustion realm? In other words, did you forfeit that argument, or do you maintain that you presented it to the district court? No. I believe that issue was raised in one of our briefs to the district court. We did raise the issue where we said that the FDIC never started that process. They never actually provided notice to my clients of the claims process. Okay. Maybe when you return to the podium you could take your place. I will look. Okay. Thank you. Good morning, and may it please the court. My name is John Garisco, and I represent the FDIC as receiver for Premier Bank. This morning I'd like to address a couple of main points. First is that under federal law, and specifically Section 1821 D13D of the Federal Deposit Insurance Act, we could call it the FDI Act for short, no court, state or federal, has subject matter jurisdiction over the claims that the Dernisses have asserted against the FDIC in this lawsuit. And second point is that because no court can hear those claims on the merits. Because of the lack of exhaustion. Yes, Your Honor. I didn't hear why. Lack of exhaustion, I think. Exhaustion, right. Yes. The claims have to be exhausted before court has jurisdiction. That's what the statute says. Yes, Your Honor. And you say there has not been exhaustion. There has not been exhaustion. And secondly, because there hasn't been exhaustion and no court can hear the Dernisses' claims against the FDIC in this lawsuit, the district judge properly dismissed those claims, regardless of whether, as the Dernisses argue, removal was untimely here. So in other words, this isn't a situation where removal comes first in the analysis. The issue is whether any court would have subject matter jurisdiction over this case. Your brief really seems to, I mean, the timeliness of removal is discussed, but your brief seems to emphasize the exhaustion issue more. Would that be a fair statement of where you put the emphasis? That would be very fair, Your Honor. All right. Your counsel says that untimely removal is not a procedural defect but a jurisdictional defect. I'm looking at page 24 of your brief, and you say timeliness of removal is a procedural issue, not a jurisdictional one. When you cite a case from our court, Music v. Arrowwood, Indemnity Company, 2011, Sixth Circuit opinion, is he wrong on that? I mean, is there other, well, you cite one case on point. Are there other cases that say the same thing as well? There are other cases that say the same thing. I'm not aware of any case which has held, certainly any time in the recent past, that whether removal is timely or not goes to the jurisdiction of the federal court rather than creates a procedural defect. I don't think there's any dispute as to that. I think that's the key. I mean, did Judge Yonker have power to act granting the motion to dismiss for failing to exhaust? And they say, well, a technical, or not a technical, a violation of the removal deadlines deprives him of his authority to act at all. And I think that's kind of the key here. But you're confident in that position. It's a procedural defect, not a jurisdictional one, untimeliness of a removal. Yes, Your Honor. Untimeliness of removal is a procedural defect. Judge Yonker had original jurisdiction over this case, which goes to jurisdiction. Jurisdictional defects on removal are, was there diversity jurisdiction or was there federal question jurisdiction? Something to get it inside the federal courthouse. The issue here is, under Section 1819B2A, any case to which the FDIC is named as a party, that entire case is deemed to arise under the laws of the United States, which creates federal question jurisdiction under 28 U.S.C. 1331. So there's no dispute here that Judge Yonker had the ability to make the decision that he did make because he had original jurisdiction over this case, which, by the way, also contained RICO and Fair Debt Collection Practice Act claims. So there was a federal question even without the FDIC. So going to the issue of subject marriage jurisdiction over these particular claims against the FDIC, under 1821D of the Federal Deposit Insurance Act or the FDI Act, Congress set forth a claims process by which all claims against, all claims arising out of a failed bank receivership had to be routed before the FDIC would then be required to litigate those claims. And as I mentioned, Section 1821D13D says that except as otherwise provided in that section, in other words, unless and until the claims process is complied with, no court shall have jurisdiction over any claim relating to any act or omission of a failed bank or the FDIC as receiver of a failed bank. And in this situation, there's no dispute that the Dernis' claims against the FDIC relate to acts or omissions of either Premier Bank, the failed bank that they dealt with, or the FDIC as receiver of Premier Bank. In fact- That does not matter. Claims are based on the conduct of the receiver. Yes, Your Honor, and that goes to the earlier issue that was briefed below. Counsel pointed to the language of 1821D13D, little i, which talks about claims relating to assets that are in the possession of the FDIC as receiver. But there's little to i, which talks about claims that relate to acts or omissions of either the failed bank or the FDIC as receiver. There's really no dispute here that the Dernis' are complaining about acts or omissions of Premier Bank or the FDIC as receiver. This is the third such lawsuit that they filed against either Premier Bank or the FDIC. As we pointed out in our brief, two other lawsuits were filed just- I don't know. You said it doesn't matter that they're filing these claims against- They've always filed against both the FDIC and the receiver, you say? Correct, Your Honor. The sale of the properties, the changing of ownership matters not? It does not matter with respect to whether they need to exhaust through the claims process claims against the FDIC as receiver. There's been litigation in this court and elsewhere over whether that is relevant to any claims that might be pursued against third parties. For example, the City of Oakwood decision. There are issues as to whether the claims process applies when an assuming institution that takes the failed bank's assets is sued. There's never an issue when a plaintiff seeks to sue the FDIC, which is what we have today. Thank you. Essentially, Your Honor, with respect to the claims process, again, this is the third lawsuit. The first two are called pre-receivership lawsuits because they were filed before the bank failed. This one was filed three years after the bank failed. It's a post-receivership lawsuit. How does 1821 D13D treat post-receivership lawsuits like this one? This court sentenced Superior v. Boyd that no court can acquire jurisdiction after the receiver is appointed unless the claims process is complied with. In this case, what would the claims process require a claimant to do? Really two things. One is commence the process by filing an administrative claim with the FDIC. And then secondly, in the event that the FDIC disallowed that claim, then the claimant would have the right to file a lawsuit against the FDIC on that claim within 60 days of disallowance in one of only two specified courts, either the U.S. District Court for the District of Columbia or the U.S. District Court for the District where the failed bank had its principal place of business, which in this case, for Premier Bank, would have been the Northern District of Illinois. Under no circumstances does Section 1821 D ever give a state court jurisdiction over a post-receivership lawsuit like this one. In this situation, talking about the two-step claim process, I just described that Derness has never got to step one. They've never filed an administrative claim based on alleged extra omissions of the FDIC as receiver, as opposed to the extra omissions of Premier Bank. And so no court, state or federal, has subject matter jurisdiction over the claims that Derness has brought against the FDIC in this lawsuit. That goes to my second point, which is because no court could ever hear the merits of these claims, the District Court's dismissal was proper, regardless of whether, as Judge Grubin suggested, removal of this case was untimely. Counsel talks about issues of federalism. Federalism is not the issue here. This is a situation where Congress has spoken. It doesn't matter whether RICO claims, as a general matter, can be heard in a state court, whether any other type of claim can be heard in a state court. Because for the specific claims on this appeal, which are claims against the FDIC as receiver, Congress has answered the question. It has withdrawn subject matter jurisdiction from any court, state or federal, unless and until the claims process is exhausted. And we believe that the Third Circuit got it right in the Wujik case that we discussed in our brief. Wujik had facts very similar to these. It was a situation where, in that case, the RTC, no longer in existence, but at the time it shared the same claims process as the FDIC, where the RTC was sued and only four days after the RTC was sued did the plaintiffs try to file an administrative claim. But again, as under Superior v. Boyd, it's too late then. You cannot sue until the claims process has been completely exhausted. So in that case, the RTC removed the case. The district court found removal was untimely, so I have to remand. The remand was done, but then because remand orders with respect to the RTC are appealable, the Third Circuit took the case and said, we understand there are these procedural issues that the parties are arguing about, because really all the district court had talked about was removal. The court said, well, even though the district court didn't talk about it, we need to address, because it's our obligation to address, subject matter jurisdiction. And the court found, as the district court found below, that the plain language of Section 1821 D.13d requires exhaustion before any lawsuit against the FDIC, or in that case the RTC, based on extra omissions of the failed bank or the receiver. So the court said, there's no subject matter jurisdiction here, and because remand would be, and I believe the phrase was a vacuous act, we're just going to direct the district court to dismiss the case. And again, whether you call it vacuous or not, the fact is this court cannot send this case to a court that could hear the merits. There is no court that could hear the merits of this case, because the claims process has not been exhausted. So for that reason, we believe that it is not an extraneous issue, as counsel referred to, subject matter jurisdiction over the claims against the FDIC is the issue. And as the WUJA court found, we believe this court should also find that dismissal would be proper, regardless of the timeliness or untimeliness of removal. Again, federalism is not an issue here. What Congress has dictated to be done with claims arising out of a failed bank receivership is the issue, and Congress has spoken clearly. I also want to address a point that Judge Cook asked my opponent about, an issue that was raised in their opening brief regarding whether the FDIC gave the Dernisses proper notice of the claims process under 1821d3. I asked whether it had been raised to the district court. You're going to address that? Yes, that's right, Your Honor. I'm sorry about that. The answer is there was no oral argument, as my opponent correctly noted, and it's not to be found anywhere in the district court briefs, this issue of whether notice was given. We believe, as we argued, that it's been forfeited. I would only add, as we've argued, the case law is clear that a failure to give that notice does not excuse a claimant from complying with the claims process, and plus there is no dispute here that the Dernisses not only had notice of the claims process, Mr. Dernisses filed a claim in 2012 based on the extra omissions of Premier Bank. What more notice he could have needed, we struggled to determine. This is a case where the Dernisses knew about the claims process, exercised it then, but they haven't exercised it now, and that means that no court in this land, state or federal, has subject marriage jurisdiction to hear these claims, and so dismissal was proper and the district court's decision should be affirmed. If anyone else has any questions? No. Thank you. Thank you. To answer your question, Judge Cook, I did not see anything in the lower court regarding that issue of whether notice had been properly given. If my recollection is correct, it was not an issue that was raised in the district court. I think it was only after that, through a process of this appeal, that we learned that the FDIC never gave notice to the Dernisses as to the claims process for acts or omissions of the FDICR, and I think counsel for the FDIC would agree with me that the FDIC never gave notice. But he also made the point that you had notice because you filed your own claims, right? Is he wrong about that? Well, I think the plaintiffs previously, the Dernisses, did file a claim with the FDIC as to acts or omissions of Premier Bank, but never as to acts or omissions of the FDICR. FDIC, I see. And it's that notice that was lacking, that notice by the FDICR as to claims or omissions of the FDICR that was lacking. The point that was being made was that your clients had awareness of the existence, actual awareness of the existence of the claims process and the sorts of claims that could be brought under it. Well, I can't argue with you that they had knowledge of that as to Premier Bank. That would be correct. The issue then arose as to once there was a discovery that the FDIC through this process was aware of the fraud committed by Premier Bank. Let's not lose sight of that. The FDIC knew that there were forged documents. The FDIC knew that there were collateral added to documents without consent of the Dernisses. All that was known by the FDIC. Nevertheless, the FDIC still took those fraudulent documents and sold them to Amos Financial. That happened. That actually happened in real life. That's not theoretical. The FDIC knew about it. They didn't care about the fraud. They sold the documents anyway. It was at that point that the Dernisses realized that there was fraud then committed by the FDIC. And it's that area where the notice by the FDIC to the Dernisses of the claims process was never given to the Dernisses. And therefore, they didn't exhaust administrative remedies as to the FDICR because notice was never given to them. That's how we get to the point where, in a long way of answering your question, that yeah, they didn't go through that claims process as to the FDICR related to claims against the FDIC. Still, we think it's very important that by the time the FDIC was brought into this case and was sued, they'd already sold the properties. They weren't assets anymore of the FDIC. We weren't litigating about assets of the FDIC anymore. We were litigating about other fraudulent conduct of the FDIC. So any other questions? Thank you very much. I appreciate it. Thank you both for your argument. We'll consider the case carefully.